IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RALPH JOHNSTON, JR., <br><br>    Petitioner, <br><br> v. <br><br> WARDEN RICKY FOXWELL, <br> THE ATTORNEY GENERAL OF THE <br>   STATE OF MARYLAND, *Brian Frosh*, <br><br>    Respondents. | Civil Action No.: PX-18-168 |

**MEMORANDUM OPINION**

Ralph Johnston, Jr. petitions for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Respondents assert that all but two claims are procedurally defaulted. ECF No. 13. Johnston urges this Court to excuse the procedural default and accord relief on the merits. ECF No. 15. The matter is fully briefed and a hearing is not necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018). For the following reasons, the petition shall be dismissed and a certificate of appealability shall not issue.

**I.     Background**

In January of 2012, Johnston was tried by jury in Prince George's County Circuit Court for first and second degree assault, carrying a dangerous weapon, and conspiracy to commit first degree assault. ECF No. 13-1 at 3 -5. The incident giving rise to the charges took place at a small party on the night of July 2, 2011, at the home of a man named "Martinez." ECF No. 13-4 at 5, 7. Shawn Tillman, the victim, testified that Martinez at some point wanted a woman come to the house to perform a "lap dance, strip and everything." Tillman contacted a female acquaintance and when the woman declined, a "commotion" ensued. *Id*. ECF No. 13-4 at 6-9.

Tillman decided to leave. He began walking to his house two doors away. *Id*. As Tillman walked, he noticed Johnston and another man, Wan Hill, following him. *Id*. at 10. When Tillman turned around, Johnston punched him in the face about ten times. *Id*. at 10-11. Tillman put his hands up in an effort to steel himself from the blows. *Id*. When Johnston stopped hitting Tillman, Tilman noticed he was bleeding profusely from stab wounds. ECF No. 13-4 at 12. He called for help. *Id*. at 13. A neighbor came to his aid. *Id*. Tillman was hospitalized for eight days with serious injuries.[1] *Id*. at 15.

On cross-examination, Tillman admitted that he had been drinking that night but that he knows the individual who stabbed him was not "here," meaning at the trial. *Id*. at 18. Tillman further testified that he believed he was stabbed with a knife, but never saw the weapon. *Id*. at 19. He did see Johnston and Hill get into Martinez's car and drive away. *Id*.

Prince George's County Police Detective Calvin Tyson, interviewed Tillman and photographed his injuries. At trial, Tyson introduced the photographs and Tillman's blood-stained clothing from that night, and emergency medical personnel identified other clothing that they had removed from Tillman while rendering aid. ECF No. 13-4 at 26-32; *see also id.* at 33-39.

At the close of the State's evidence, Johnston, through counsel, moved for judgment of acquittal on all counts. ECF No. 13-4 at 43. The State conceded that insufficient evidence supported a conspiracy charge, and that count was nolle prosequi. *Id*. at 43-44. Johnston had not argued any other grounds for acquittal, and the motion was otherwise denied. *Id*. at 44-45.

At the charge conference, Johnston objected to including the pattern jury instruction on aiding and abetting in the charge to the jury. ECF No. 13-4 at 46. Johnston more particularly argued that no evidence supported any inference that either Johnston or Hill aided or abetted the

---

[1] Tillman was stabbed 14 times and required surgery to repair his liver. ECF No. 13-5 at 6.

other. *Id*. The trial court overruled the objection, noting that whether each man assisted the other in the assault was a question of fact for the jury. *Id*. at 47. Johnston also renewed his motion for acquittal on first degree assault because the evidence demonstrated "it was carried out by someone else." *Id*. at 48. The trial court again denied the motion. *Id*. at 49.

During deliberations, Johnston reasserted previous objections to the aiding and abetting instruction as applied to the misdemeanor of carrying a dangerous weapon but recast the claims as infirmities in the verdict sheet. ECF No. 13-4 at 78. After the verdict, Johnston renewed his objection to the verdict sheet question, "Did the defendant, or another person participating in the crime with the defendant, assault Shawn Tillman in the first degree?" as ambiguous and inviting error. *Id*. at 80. The trial court again overruled the objection and Johnston was convicted of first-degree assault and carrying a dangerous weapon. *Id*. at 83-84.

Johnston was sentenced on March 2, 2012. During allocution, Johnston personally admitted to hitting Tillman in the face. ECF No. 13-5. Johnston also expressed remorse that Tillman suffered injuries from having been stabbed. *Id*. at 7. The trial court acknowledged that Johnston was "not the person that actually impaled Mr. Tillman with a knife, but it was your actions which made it easier for him to become impaled." *Id*. The court sentenced Johnston to ten years' imprisonment on the first degree assault count and three years imprisonment to run concurrently on the dangerous weapon count. *Id*. at 8.

On direct appeal, Johnston argued that the evidence was insufficient to support the two counts of conviction and reasserted his arguments regarding the aiding and abetting instruction and verdict sheet. ECF No. 13-6 at 3. The Court of Special Appeals affirmed Johnston's conviction for first degree assault but vacated the dangerous weapon conviction. ECF No. 13-8.

The court's mandate issued August 23, 2013. *Id.* at 20. Johnston unsuccessfully sought certiorari from the Maryland Court of Appeals. ECF No. 13-9 at 1 and 3.

On October 29, 2015, Johnston petitioned for post-conviction relief in the Prince George's County Circuit Court and received a hearing on August 23, 2016. ECF No. 13-10 at 1. Johnston raised dozens of claims in his post-conviction petition. As to trial counsel, Johnston maintained that counsel failed to (1) "take specific investigative steps;" (2) challenge Johnston's statements having been obtained without proper Miranda warning; (3) attempt to have the bloody knife suppressed; (4) request severance after Tillman's testimony referencing the "person who is not here;" (5) cross examine medical personnel properly; (6) move in limine to exclude the bloody clothing; (7) request a "lesser included offense" instruction and (8) preserve certain arguments on appeal. ECF No. 13-10 at 4-6.

As to evidentiary challenges, Johnston argued that no evidence reflected his having used "any kind of weapon that may have impaled the victim," and that the state improperly advocated for Johnston's conviction based on the acts of another person. Johnston also found fault in the trial judge for failing to "determining the evidence of victim's clothes, shirts, shoes, etc. for reliable evidence;" failing to confirm on the record whether he "waived" his right to a jury trial or plea offer; and refusing to instruct the jury on "two forms of assault." Johnston also repackaged a series of related complaints aimed at the State. *Id.*

The Circuit Court denied Johnston's post-conviction petition. Johnston next sought review from the Court of Special Appeals, but only as to certain claims including ineffective assistance of counsel, due process challenges, and sufficiency of the evidence on the first degree assault conviction. ECF No. 13-11 at 1. On October 3, 2017, the Court of Special Appeals summarily

4

denied the application. ECF No. 13-12. The appellate court's mandate issued on November 2, 2017. *Id*. Johnston thereafter filed this Petition on January 18, 2018.

## II.     Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits either "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

As to underlying factual findings, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be

5

particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## III. Analysis

Johnston now argues that his trial counsel was ineffective for not moving to suppress statements surrounding his "stop, frisk and arrest," as well as Hill's statements made at his plea hearing on February 9, 2012. ECF No. 1-1 at 7. Johnston further challenges trial counsel's failure to perform an adequate pretrial investigation or move to dismiss the indictment as defective. *Id*. at 8). Johnston presses that the State "misrepresented evidence," *id*. at 9-10, and that the trial court failed to instruct the jury properly, *id*. at 11. Johnston also makes several new arguments including a supposed conflict between the trial court and prosecutor arising from Hill's guilty plea, the state's failure to disclose exculpatory *Brady* material, *id*. at 14-21, trial counsel's failure to challenge as unduly suggestive out-of-court identification of Johnston, *id*. at 15-17; 25-26; and that the charging document is void because it was not signed by the State's Attorney. *Id*. at 30.

Respondents point out that only two of the claimed errors have been properly exhausted and are not subject to procedural default. ECF No. 13 at 21-25. Respondents further contend that both preserved claims are meritless. The Court addresses each argument in turn.

### A. Procedural Default

A claim is procedurally defaulted when the petitioner failed to present the claim at every stage and to the highest state court with jurisdiction to hear it. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure

to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). Procedural default also occurs where the claim was raised but the court declined consideration "on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999). *See also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a claim is procedurally defaulted, a federal court may not address the merits unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, that is, conviction of one who is actually innocent. *See Murray,* 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id*. (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, this Court must still consider whether it should reach the merits of the claims to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

A fundamental miscarriage of justice occurs where the error leads to the imprisonment of a person who is actually innocent. *Id*. at 320. In this respect, innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. Where a petitioner demonstrates "a constitutional violation has probably resulted in the conviction of one who is actually innocent," the federal court must address the merits of the claim. *Murray*, 477 U.S. at 496.

"To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson,* 523 U.S. 538, (1998) (quoting *Schlup*, 513 U.S. at

324). New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson v. Greene*, 155 F.3d 396, 404-05 (4th Cir.), *appl. for stay and cert. denied sub. nom. Wilson v. Taylor*, 525 U.S. 1012 (1998). The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir.1999). The "fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *McQuiggin*, 569 U.S. at 392. To invoke the actual innocence exception, Johnston "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

As cause for excusing his failure to raise the claims presented in this Petition, Johnston blames the post-conviction court's failure to address them. He also maintains that another witness who described someone other than Johnston as the person who stabbed Tillman is "newly discovered evidence" that demonstrates his actual innocence. ECF No. 15. Johnston's grounds for excusing his procedural default fail on both fronts.

Blaming the post-conviction court, Johnston highlights that the court reviewed "only 22 errors" and ignored at least 30 additional assertions. ECF No. 15 at 2. That the post-conviction may not have expressly addressed each and every one of Johnston's contentions does not justify *his* failure to pursue the matters on appeal. The post-conviction court's decision to focus on only certain claimed errors does not amount to an error "external to the defense" so as to excuse his failure to preserve the claims.

As to his assertions of actual innocence, Johnston points to a wide array of evidence produced or introduced at trial, none of which is "new." ECF No. 15 at 4. Nor does any of it establish Johnston's actual innocence. The State's theory of the case was that Hill stabbed Tillman and Johnston punched him repeatedly in the face. ECF No. 13-8 at 12. Thus, the question for the jury was whether Johnston was guilty of first degree assault either because he punched Tillman repeatedly, or by so doing, aided and abetted Hill in the stabbing . ECF 13-5 at 7. On this point, the trial evidence, combined with Johnston's own admission to punching Tillman in the face, defeats his actual innocence claim.

Accordingly, the Court agrees with Respondents that all but two claims have been procedurally defaulted and without excuse. The lion's share of Johnston's claims are denied and dismissed. The Court next turns to the merits of the non-defaulted claims.

### B.     Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the prejudice prong, the Court must consider whether "a reasonable probability" existed that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct. A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. As to the state court's application of *Strickland*, Petitioner must show that the state court applied *Strickland* in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698–99 (2002) ("For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first

9

instance"); *see also Owens v. Stirling*, 2020 WL 4197742, at *9 (4th Cir. July 22, 2020) (stating AEDPA and *Strickland* create a "double-deference standard.").

Johnston presses in this Petition that trial counsel was ineffective in failing to seek suppression of an out-of-court identification.[5] ECF No. 6-2 at 15. But this contention is like many of Johnston's asserted errors – a matter of trial strategy for which trial counsel is granted "'wide latitude" in making tactical decisions and "will be limited to any one technique or approach." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86 (2011). ECF No. 13-10 at 7. Application of the post-conviction court's rationale to Johnston's claim survives scrutiny. Trial counsel is not required to request a pre-trial suppression hearing where, as here, no legal basis exists to grant suppression of an in court identification.

As to trial counsel's failure to investigate the case, this Court sees no basis to upset the post-conviction court's decision. Trial counsel reviewed the facts of the case with Johnston in advance of trial, filed appropriate discovery motions, and reviewed all evidence the State disclosed. ECF No. 13-10 at 6. The post-conviction court credited counsel's description of his due diligence in trial preparation and concluded that Johnston "failed to demonstrate that trial counsel did not take investigative steps towards the case." *Id.* at 6-7. The Court also credited that counsel was "focused on [Johnston's] case during the time of the trial." *Id.* at 11. The post-conviction court's findings of fact and legal conclusions are not unreasonable. Thus, the Court sees no basis to grant Johnston relief on this ground. His petition must be denied.

---

[5] This claim is confusing. Johnston states at one point that an out-of-court identification was inherently reliable and not subject to suppression. ECF No. 6-2 at 16. If Johnston is referring to Tillman's identification that Tillman made while hospitalized, then the challenge to his trial counsel's failure to seek suppression of the same does not make sense.

### C. Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). Johnston "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When the district court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right. *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because this Court finds Johnston has not made the requisite showing, a certificate of appealability shall be denied. *See* 28 U. S.C. § 2253(c)(2). Johnston may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

### IV. Conclusion

By separate Order, the Petition for Writ of Habeas Corpus is denied and a certificate of appealability shall not issue.

| 8/25/20 | /S/ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |

11